THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SHARONE McGEE, Defendant-Appellant.

First District (2nd Division) No. 1—88—3650

Opinion filed April 30, 1991.

Randolph N. Stone, Public Defender, of Chicago (Violet T. Ricks and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and Kevin C. Hughes, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Sharone McGee appeals from his conviction by a jury for the voluntary manslaughter of James Mathis and from his resulting sentence of 12 years in the custody of the Illinois Department of Corrections. He claims that his conviction was insufficiently supported by the evidence. He further alleges that he did not receive a fair trial, in that: (1) the prosecutor made prejudicial remarks during argument; (2) evidence of his prior bad acts was improperly admitted; (3) evidence that Mathis had prior robbery convictions was wrongfully excluded; (4) evidence of a conversation between him and Mathis was inappropriately admitted; and (5) the jury was not instructed on the elements of involuntary manslaughter. Finally, McGee claims that his sentence was excessive. He seeks either: reversal of his conviction, reversal with a remand for a new trial, reduction of his sentence or vacation of that sentence with a remand for a new sentencing hearing.

Theresa Denard testified at trial that she lived with Mathis at the time of the incident and was his fiancee. She met McGee in a "game room" on March 12, 1987, while with her nieces, Johnetta and

Tonette Boyce. McGee approached her, introduced himself, told her that he knew where she lived, that he knew her boyfriend and that Mathis was cheating on her. McGee told Theresa that the next time he saw Mathis cheating on her, he would prove it to her. He then asked whether he could walk Theresa home, but she declined the invitation.

On March 15, 1987, Gregory Redmond, a neighbor, knocked at her door and asked whether Mathis was home. He left when Theresa said that her fiance wasn't there. As he left, however, Theresa saw McGee sitting on the stairs and her sister coming up the stairs. When her sister reached the spot where McGee was sitting, McGee asked her for a cigarette. Theresa's sister refused, saying that she didn't know him. McGee then said, "[T]hese punk mother fuckers don't know who I am, but I am going to show them." Theresa then closed the door, but heard four to six shots fired, the source of which she attributed to McGee.

On the afternoon of March 19, 1987, Tonette told Mathis that McGee was downstairs from Theresa's and Mathis' apartment. Mathis went downstairs, intending, according to Theresa, to ask McGee to stop bothering residents of the building. Tonette and Theresa looked out the window and saw McGee and Mathis standing and talking in front of the building. Mathis told McGee not to shoot in the hallway; McGee replied that he would shoot where he pleased. When Mathis repeated his request, McGee said, "If all these people wasn't out here I would do something to you," apparently referring to people who were on the porch of the building but who were not visible to Theresa.

Mathis replied that McGee should do what he was going to do. McGee then asked Mathis to step into a nearby alley. Mathis replied, "Let's go," whereupon he followed McGee into the alley. Theresa, after running from the window to put some clothes on so she could go down and get Mathis, returned to the window and saw McGee pull a small handgun out of his pocket as he entered the alley, then heard a shot after McGee entered.

Theresa, running to a fire escape to secure a different vantage point, saw McGee and Mathis in the alley approximately four to six feet apart. McGee held his gun while the two exchanged words which were inaudible to her. Mathis' hands were empty and were down at his sides. McGee, pointing the gun at Mathis, shot him in the chest; Mathis stepped backwards and fell to the ground. McGee, while running away, said, "[N]o one knows me. No one seen me." By the time an ambulance arrived, Mathis was dead.

Theresa testified that she was getting dressed when at least one of the shots was fired, and wasn't sure whether McGee fired three or four shots. Further, after the second or third shot, Mathis punched McGee, although the two men were sufficiently far apart that the punch only "touched" McGee, and so "didn't even bother him." Mathis was shot after he punched McGee.

Theresa's niece, Johnetta, testified that she had known McGee for about a year and a half prior to the shooting. She witnessed the March 12, 1987, incident, but did not hear what was said to Theresa. On March 15, 1987, she witnessed Redmond's attempt to find Mathis at Theresa's apartment, saw McGee outside the door, saw him and Theresa's sister converse, and, about five minutes after Theresa closed the door, heard shots fired. Like Theresa, she did not see who had fired the shots, but had assumed that they had been fired by McGee; McGee, before going downstairs, had commented that he was "going to show them."

Johnetta was at Theresa's house on March 19, 1987. She testified similarly to Theresa about Mathis' decision to go downstairs and confront McGee. When it appeared that the two men were going to fight, Johnetta went onto the fire escape and from that spot saw the two in the alley, heard three shots and saw the fourth shot by McGee hit Mathis. She did not see Mathis punch McGee. She did see two persons, Alerick Rhodes and Albert Denard, Theresa's brother, standing by a gate at the mouth of the alley during the incident.

Tonette testified that she knew McGee for about six months prior to the shooting of Mathis. She witnessed the March 12, 1987, incident and her testimony as to the subject matter of the conversation between Theresa and McGee was similar to Theresa's. She witnessed the March 15, 1987, incident and heard the remarks made by McGee before the shots were fired. She testified, however, that "not even two seconds" passed between the time McGee went down the stairs and the time she heard shots fired in the hallway. During the March 19, 1987, incident, Tonette was at Theresa's and saw and heard McGee and Mathis argue. She heard four gunshots, but saw only the aftermath—Mathis lying on the ground.

Albert Denard testified that he was downstairs on the porch of his sister's house on March 19, 1987, along with McGee, Redmond and Rhodes. Mathis came downstairs and asked McGee why he was shooting in the hallway. McGee replied that he would shoot where he pleased. Mathis told McGee that he was "coming to him as a man. Not as a boy."

When Mathis remarked that he had relatives upstairs who could have been shot by McGee, McGee replied, "If it wasn't so many people out here I would do something to you." Mathis replied, "Fuck these people." McGee than asked Mathis whether he wanted to box and led him down the stairs of the porch and toward an alley. As the two headed toward the alley, McGee pulled a gun, approximately eight inches long, from his pocket. Albert and Rhodes followed the two men, but stopped and watched from the end of the alley.

Albert testified that while pointing the gun at Mathis, McGee began to shoot at him. Mathis ducked the first bullet, which hit a gate. Mathis said to McGee, "Why do you have a gun?" He asked McGee to put the gun down, told him that he didn't have a gun and asked why McGee needed a gun—all the while having his empty hands in front of him. McGee then fired a second shot at Mathis' head, which missed and chipped a gate. Mathis' hands fell to his sides, still empty. McGee then fired another shot at Mathis, which missed and hit a wall. After this shot, Mathis pushed McGee, "chipp[ing]" (slightly touching) him on the chin. This, according to Albert, had no effect on McGee, who then shot Mathis in the chest. When Mathis fell, McGee ran away, saying, "Nobody saw me, nobody knows me."

Albert testified that during the incident, both he and Rhodes stood outside the alley, had nothing in their hands other than some money Albert was holding, and had their hands in front of them. Albert testified under cross-examination that he told the police where the first three shots had hit; he did not show them where they had hit, however, as he was not asked.

Jack Bailey, an assistant State's Attorney, testified that he interviewed McGee, alone, for 45 minutes at police headquarters after his arrest. McGee, who was 17 years old at the time, told Bailey that he had had a conversation with Mathis and that an argument ensued. Mathis suggested that they take their argument into an alley. Once in the alley, Mathis, who was wearing a jacket, put his hands into the pockets of the jacket. At that point, McGee, believing that Mathis had a gun, took out his gun, which was fully loaded, and fired it three times into the air. After McGee fired the bullets, Mathis struck him in the face. McGee then shot Mathis in the chest.

Bailey admitted on cross-examination that no court reporter was requested to report the interview, and further, that the notes he took during the interview were not made verbatim.

Both parties stipulated that Mathis died of a gunshot wound to the chest, and that Mathis weighed 158 pounds and was 70½ inches tall.

Robert Kleinschmidt, a detective for the Chicago police department, testified that he was involved in the investigation of Mathis' shooting. He found a jacket among Mathis' belongings which he did not examine for gunshot residue. He and his partner interviewed Theresa on the day of the shooting and described her as distraught, excited, scared and speaking very quickly, on March 19, 1987. She told him that three shots were fired and that the two men were approximately two feet apart. She did not tell him what McGee said after Mathis was shot.

On that same day Kleinschmidt also interviewed Albert, who told him that McGee fired six shots at Mathis, the last of which struck the victim. Albert did not tell him that Mathis had told McGee that he did not have a gun, nor that bullets had hit the gate or the wall by the alley where the incident took place. While he examined the scene of the crime, therefore, he did not examine those places where bullets are alleged to have hit.

McGee was found guilty of voluntary manslaughter on November 18, 1988.

■■ ■ McGee claims that the evidence at trial was insufficient to support a conviction for voluntary manslaughter because there was insufficient evidence to support the State's charge that his belief at the time of the killing that he was justified in his use of force against Mathis was unreasonable. (See section 9—2(b) of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b)).) McGee argues that the State failed to prove beyond a reasonable doubt that he didn't reasonably believe that Mathis's shooting was necessary to defend himself against imminent death or bodily harm from Mathis.

> "A person is justified in the use of force [which is intended or likely to cause death or great bodily harm] against another *** only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself ***."
> Ill. Rev. Stat. 1985, ch. 38, par. 7—1.

"Self-defense is an affirmative defense [citation], and once it has been raised by the defendant, the State has the burden of disproving it beyond a reasonable doubt." (*People v. Young* (1989), 187 Ill. App. 3d 977, 984.) "The test *** is whether the facts and circumstances would induce a reasonable apprehension of serious bodily harm in light of the defendant's perception of the situation at the time he employed force against the aggressor." (*People v. Estes* (1984), 127 Ill. App. 3d 642, 651.) When reviewing a claim of insufficient evidence, however, we must look at the evidence in the light most favorable to

the prosecution, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *People v. Young* (1989), 128 Ill. 2d 1, 49.

Reviewing, in accordance with the foregoing principles, the evidence in the instant case, we find that McGee challenged Mathis, who was 3½ inches taller and three years older, to fight him in the alley. Once in the alley, the two men, McGee with a gun in his hands and Mathis unarmed, stood about four to six feet apart and exchanged words. Two of Mathis' friends were outside the alley, but had nothing in their hands with which they could pose a threat to McGee.

McGee shot at Mathis, after which Mathis told him that he didn't have a gun. McGee shot at Mathis twice more; Mathis ducked both shots. After the third shot, Mathis swung at McGee, his fist barely striking McGee's chin and having no effect on him. Pointing the gun at Mathis' chest, McGee shot and killed Mathis.

■ The jury, whose job it is to weigh evidence and determine the credibility of witnesses (see *Young*, 128 Ill. 2d at 51), could reasonably have believed this version of events and found that McGee's belief that Mathis posed a serious threat to him was unreasonable. In *People v. Polk* (1979), 70 Ill. App. 3d 903, cited by McGee, the court, while holding that "it is not necessary that the apparent danger prove to be real or that the victim be armed with a deadly weapon in order for a person to have a reasonable belief that his life is endangered to the point of justifying a killing," nevertheless upheld a voluntary manslaughter conviction when the defendant claimed that he thought the victim was reaching for a gun, but other witnesses testified that the victim's hands did not move so as to provide the basis for such a belief. (70 Ill. App. 3d at 905.) Moreover, in *People v. Ellis* (1982), 107 Ill. App. 3d 603, the court upheld such a conviction against a claim of self-defense when the defendant, who was disabled and who was smaller than the decedent, and who had already fired a warning shot, claimed that the unarmed decedent's "lunge" toward him justified the shooting. Similarly, we cannot take seriously McGee's claim that Mathis' willingness to punch him after he had already fired the gun at Mathis gave McGee reasonable grounds to believe that he was in serious danger. Accordingly, we hold that the evidence of McGee's guilt was sufficient to sustain his conviction.

With regard to the fairness of his trial, McGee first claims that prosecutorial remarks during argument portrayed McGee as a bad person and unduly prejudiced the jury. Specifically, McGee notes that during his opening statement, the prosecutor claimed that McGee was

"the kind of guy that once he has a twenty-two caliber pistol in his hand, a Saturday night special, becomes a very different sort of person than you see sitting right here. He becomes the kind of person who accosts young ladies on the street[,] *** who insults these young ladies' boyfriends[,] *** who makes advances towards these strangers on the street[,] *** who makes threats towards these young women and their boyfriends."

Further, the prosecutor stated that McGee called Mathis out from the

"sanctity of his home[,] *** calls him out into the alley to have a fistfight. *** [H]e· is the kind of man who faced one-on-one with an unarmed man, pulls out that twenty-two caliber handgun and shoots an unarmed man in cold blood with that Saturday night special. *** You will hear all this, the kind of man Sharone McGee is, through the evidence that you will hear."

During the State's closing argument, the prosecutor argued that the jury had learned that McGee was the "kind of man" who made threats and who carried them out; who would walk up to a woman, insult her and threaten both her and her fiance; who provoked things with other people and who used people to help him follow up on those threats. The State claimed that on March 15, McGee used Redmond to gain access to Theresa's and Mathis' building, and that he waited by the door with a "Saturday night special" while Redmond was asking where Mathis was. In discussing Mathis' shooting, the State claimed that while Mathis entered the alley "alone," McGee entered with "his Saturday night special," and that McGee carried out his threats, was "the aggressor[,] *** the provoker *** [and] the one who introduced deadly force."

Finally, during his rebuttal argument, the prosecutor told the jury that they could not believe that McGee was justified in shooting Mathis and that McGee was guilty of murder rather than manslaughter.

McGee alleges that these statements were not based on the evidence and were merely the opinions of the prosecutor. These "opinions," according to McGee, cumulatively portrayed him as a bad person, prejudiced the jury against him and, therefore, deprived him of a fair trial. The State argues in response that McGee, by failing to object at trial to most of the arguments and by failing to properly preserve in his post-trial motion the allegation of error as to one statement to which he did object, has waived any right to have this issue reviewed.

McGee failed to object at trial to any of the complained-of prosecutorial statements with the exception of the statement in closing ar-

gument that, "He's the kind of man who would walk up to a woman that he has never met before in his life, walk up to her and insult and threaten not only her \*\*\* but her fiance." The court overruled McGee's objection to this statement and admonished the jury to, "Rely upon your own recollection of the incident."

■ McGee's failure to object at trial to the remaining statements of which he complains waived his right to their review by this court unless, pursuant to Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)), the statements constituted "[p]lain errors or defects affecting substantial rights." (*People v. Enoch* (1988), 122 Ill. 2d 176, 189; *People v. Young* (1989), 128 Ill. 2d at 39.) "The criterion for the application of the plain error rule in criminal cases is whether the evidence is closely balanced or the error is of such magnitude that the commission thereof denies the accused a fair and impartial trial \*\*\*." (*Young*, 128 Ill. 2d at 47.) Because of the towering evidence of McGee's guilt, we entertain no doubt that the verdict was not affected by the aforementioned statements and therefore decline to consider them as plain error.

■ McGee persuasively argues, however, that there is no evidence for the prosecutor's assertion that McGee was "the kind of man who would walk up to a woman that he has never met before in his life, walk up to her and insult and threaten not only her \*\*\* but her fiance." This statement, which McGee properly preserved for review, should not have been admitted, and the court abused its discretion in overruling McGee's objection to it. "It is \*\*\* proper for the prosecutor to comment unfavorably on the accused \*\*\* when those comments are based upon competent and pertinent evidence." (*People v. Wallace* (1981), 100 Ill. App. 3d 424, 432.) Given, however, the overwhelming evidence of McGee's intent to kill Mathis, the court's later instruction to the jury to "disregard" "any statement or argument made by the attorneys which is not based on the evidence," and noting that the jury's verdict of voluntary manslaughter shows that the State had failed to prove that McGee did not believe that his actions were legally justified but did prove that McGee's belief was unreasonable (Ill. Rev. Stat. 1985, ch. 38, pars. 9—2(b), 7—1), any error in improperly claiming that McGee was a "bad person" was cured and could not reasonably have affected the verdict.

McGee next argues that testimony from Theresa, Tonette and Johnetta regarding the March 12 and March 15, 1987, incidents was irrelevant to the crime for which he was charged and that it prejudiced the jury. This testimony, charges McGee, helped prove only that

he had the propensity to commit the charged offense, and as such, was inadmissible.

■ Notwithstanding the State's claim that McGee has waived review of some of the aforementioned testimony by not objecting to it at trial (*Enoch*, 122 Ill. 2d at 186), we find that the evidence of these prior acts could reasonably have affected the verdict, as it made more believable the inference that McGee disliked Mathis, was willing to use a gun, and hence, that he intended to kill Mathis; accordingly, to the extent it may not have been properly preserved, we review this issue under the plain error exception of Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)).

■ McGee correctly asserts that "as a general rule ***, evidence which tends to show that an accused has committed *** acts of misconduct which are distinct and entirely unrelated to the one for which he is being tried is both incompetent and prejudicial." (*People v. Curry* (1975), 25 Ill. App. 3d 637, 640.) The State points out, however, that "[e]vidence of other crimes is admissible to prove any relevant purpose other than the propensity of the defendant to commit crime." (*People v. Maness* (1989), 184 Ill. App. 3d 149, 152-53.) Such relevant purposes include showing the "defendant's attitude toward [the victim, in order to determine] *** whether he was the aggressor" (*People v. Smythe* (1971), 132 Ill. App. 2d 685, 689), "absence of an innocent frame of mind or the presence of criminal intent; [and] *** circumstances of the crime charged that would otherwise be unclear" (*People v. Crayton* (1988), 175 Ill. App. 3d 932, 946).

■ Not only does the March 12 exchange between McGee and Theresa Denard not appear to qualify as an "act of misconduct," but, it evidences McGee's hostility toward Mathis and his willingness to use a gun and was probative of McGee's intent toward him during the March 19 incident. Further, the testimony about the March 15 incident helped explain why Mathis came downstairs to face McGee on March 19, a confrontation the cause of which would otherwise have been unclear to the jury. Accordingly, we hold that the testimony concerning these two prior incidents was properly admitted. McGee's further allegation that the trial court erred by not instructing the jury that the testimony was admitted for only a limited purpose is meritless, as no such instruction was requested, and the trial court had no duty to instruct the jury *sua sponte. People v. Cregar* (1988), 172 Ill. App. 3d 807, 822-23.

McGee's third claim of trial error was the court's exclusion of evidence that Mathis had two prior robbery convictions for conduct in which he engaged in 1983 and in 1984. McGee argues that the convic-

tions showed Mathis' propensity for violence and thus were probative of his claim that Mathis was the aggressor and that he shot him in self-defense. The State responds that the nature of the convictions, one allegedly for stealing a purse from an elderly person and the other for stealing money from two young newspaper boys, was not probative of a propensity for violence, especially in view of the distance in time from McGee's shooting of Mathis; moreover, such evidence would have prejudiced the jury against Mathis. The State argues further that because there was no question that Mathis had acted aggressively when he struck McGee, the only remaining issue was whether McGee's response was reasonable; evidence that Mathis was violent would have no bearing on that question.

■■ *People v. Lynch* (1984), 104 Ill. 2d 194, upon which McGee primarily relies, holds that when self-defense is put forth to rebut a charge and the defendant is unaware of the victim's violent tendencies, "evidence of the victim's propensity for violence tends to support the defendant's version of the facts where there are conflicting accounts of what happened." Under such circumstances, "the defendant may show [the victim's aggressive and violent character] by appropriate evidence." (104 Ill. 2d at 200.) Such evidence, however, is irrelevant to a theory of self-defense which proposes that deadly force that would be unreasonable in an altercation with a presumably peaceful citizen is reasonable because the victim has violent and aggressive tendencies. 104 Ill. 2d at 200.

The *Lynch* case held that evidence that a voluntary manslaughter victim had thrice been convicted of battery before his death, when the convictions were recent and when the last came only six weeks before the homicide (104 Ill. 2d at 203), should have been admitted to show the victim's propensity for violence (104 Ill. 2d at 201). Evidence in *Lynch* about the events leading to the fatal shooting, however, was disputed. The defendant testified that the victim, after an argument, "lunged forward, reaching behind his back and beneath his coat with his right hand," leading the defendant to believe that the victim had a weapon. An eyewitness who was a friend of the victim, however, testified that the victim's "hands were in front of him but admitted that he had told police shortly after the incident that he did not see [the victim's] hands." (104 Ill. 2d at 198-99.) Evidence that the victim was a violent person, then, would support the defendant's version of events.

■■ As found by the trial judge, no such conflict exists in the instant case. There is no dispute that Mathis, standing a few feet from McGee, struck him in the jaw after McGee fired his weapon several

times. Whether these shots were intended to hit Mathis, or were only "warning shots" fired because of McGee's belief that Mathis was armed, is irrelevant to whether McGee's response to Mathis' punch was reasonable. Further, even if full credit is given to McGee's statement to Jack Bailey that Mathis called him into the alley and that he fired the warning shots because Mathis had his hands in the pocket of his jacket and McGee believed he had a gun, such testimony is not inconsistent with testimony from the other witnesses that Mathis dropped his hands to his side after the initial shots were fired, told McGee that he didn't have a gun, and had no gun in his hand when he struck McGee on the chin. Unlike the situation in *Lynch*, the lack of conflict about the defendant's perception of events means that McGee's self-defense claim was predicated upon whether, given that perception of events, his response was reasonable. Under such circumstances, evidence that Mathis, unknown to McGee, was arguably a violent person was irrelevant to McGee's claim and was properly excluded by the trial judge.

McGee next avers that the trial court erred in admitting Albert Denard's testimony that, when Mathis went down onto the front porch of his home to confront McGee, he and McGee argued about why McGee had earlier been shooting in the hallway of the house; further, that McGee threatened to "do something" to Mathis and then asked Mathis whether he wanted to box in the alley. McGee argues that this testimony was inadmissible as hearsay intended to prove that McGee had incited the altercation between the two by firing shots in the hallway during the March 15 incident. The State responds by claiming that McGee has waived his right to review of this issue by neither objecting to the statements at trial nor raising the issue in his post-trial motion. (*People v. Enoch*, 122 Ill. 2d at 186.) We agree with the State, and because, given the overwhelming evidence about what transpired in the alley, the testimony could not reasonably have affected the verdict, we therefore decline to review the issue.

McGee's final claim of error is that there was evidence that his conduct was reckless, and hence, the trial court erred in failing to instruct the jury on the elements of involuntary manslaughter. The State responds that given McGee's aiming and firing at Mathis from close range, there was no evidence of recklessness and, therefore, no basis for such an instruction.

"A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts *** which cause the death are such as are likely to cause death

or great bodily harm to some individual, and he performs them recklessly ***." (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).) "To justify an involuntary-manslaughter instruction, there must be some evidence of recklessness, though intentionally and deliberately aiming and firing does negate recklessness." *People v. Robinson* (1987), 163 Ill. App. 3d 754, 779.

 Although McGee argues that the evidence that he fired warning shots at Mathis in order to scare him is probative of recklessness, therefore requiring the requested instruction (see *People v. Hines* (1975), 31 Ill. App. 3d 295, 302 (instruction required when, as victim ran away, defendant shot him with the arguable intent to scare him)), the fatal shot was not one of the "warning" shots, but rather the shot fired at point-blank range after Mathis struck him. As in *People v. Ford* (1987), 163 Ill. App. 3d 497, 504-05 (instruction not warranted when defendant intentionally stabbed victim, who was hurting a third party, out of fear that victim would also hurt him), and in *People v. Cannon* (1988), 176 Ill. App. 3d 49, 55 (instruction not required when defendant intentionally fired shots into a residential building he knew was occupied), the lack of any evidence that the fatal shot was anything but intentionally aimed at Mathis negates any claim of recklessness and justifies the trial court's denial of the requested instruction.

Even if his conviction is upheld, McGee alleges, the trial court failed, in sentencing him, to properly consider those factors which indicate his rehabilitative potential; accordingly, his sentence of 12 years in the custody of the Illinois Department of Corrections was an abuse of the trial court's discretion and should be reduced, or this cause remanded for a new sentencing hearing. The State responds that the trial judge properly considered all relevant factors and that McGee's record amply supports the sentence imposed.

 "[A] trial court's sentencing decision will not be disturbed absent an abuse of discretion. *** [T]he *** mandate [of section 9 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, §9)] requires that the trial court actually consider rehabilitation as an objective of the sentence." (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 151.) The trial judge stated when sentencing McGee:

> "I understand that he is a young person. And I certainly do not wish to destroy any hope he might have for the future. I do not believe that it is an extended term case. But I do believe that a significant sentence must be given, not only to impress upon this defendant that he must change his ways, but also to protect the community from further acts of aggression."

We are satisfied that the trial judge did consider the effect of the sentence upon McGee. Moreover, despite McGee's being only 17 years old when he killed Mathis, having come from a poor economic background and having participated in a GED program after having been expelled from high school for fighting, he had already been convicted of battery and battery/robbery as a juvenile, had shown his willingness to use a firearm to intimidate other people and had admitted involvement in gang activities. Accordingly, we hold that the trial judge's concern that McGee's "level of violence against other persons is escalating" was warranted, and that the 12-year sentence was not an abuse of discretion.

For the foregoing reasons, McGee's conviction and sentence are affirmed.

Affirmed.

HARTMAN and DiVITO, JJ., concur.