THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JERRY WILLIAMS, Defendant-Appellant.

First District (3rd Division)   No. 1—91—0246

Opinion filed March 31, 1993.

Patrick G. Reardon, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Defendant Jerry Williams was charged with one count of threatening a public official. Following a bench trial, Williams was found guilty and sentenced to two years' felony probation, the first 60 days to be served in home confinement.

Defendant Williams was arrested on October 30, 1989, for a phone call allegedly made by him, threatening the life of Richard M. Daley, mayor of the City of Chicago. At 6:52 p.m. on October 30, 1989, the 911 police emergency line received a call from an unidentified person who said: "I got a bullet for Daley's back tomorrow, baby, eleven o'clock *** see you there. He's dead." The operator handling the call was able to identify the telephone number and address of the calling telephone as that of the defendant, because it was displayed on a computer screen.

The police subsequently arrested Williams. The operator, Sharon Godbold, called to verify Williams' phone number at which time she engaged Williams in a conversation, asking if the number displayed on her computer was his phone number. The number that she called was the number which had been displayed on her computer screen when the threatening call was received. At that point, the police were at the door of Williams' home.

At trial, the prosecution tendered to the defense a cassette tape which contained, in sequence, a recording of the original threatening call, numerous conversations of police officers, followed by the conversation between defendant and Godbold. Hence, this same tape, marked as defense exhibit No. 8, contained samples of the voice known to be that of the defendant and of the voice of the threatening caller. The defense argued that each voice was the voice of a different person; however, Godbold testified that the voices were identical.

The defense then attempted to cross-examine Godbold with a duplicate cassette which eliminated the intervening police calls, such that the voice of the defendant immediately followed that of the threatening caller. The State objected to the admission of this alternative tape on the basis that the proper foundation for introduction of the tape into evidence had not been laid.

By stipulation, the parties admitted the report of a voice print expert, Steven Cain, who, by using a spectrograph and by listening, was unable to render an opinion as to whether the voices were the same. Cain stated that the evidence was "far from conclusive."

Following his arrest, the police discovered two vintage guns kept in a bucket in defendant's apartment. These were admitted into evidence. Williams testified that he never called the 911 emergency line and he never made any of the threats contained on the tape. Williams further produced a series of photographs showing incoming telephone lines into the basement of the multiunit building where he lived. Many of these lines were housed in open panels on the walls in an unlocked basement. Another exhibit showed a phone call as having been made from his telephone, while Williams was in custody following his arrest. Williams stated that his apartment had been unoccupied while he was in custody and that he lived alone at 817 W. 83rd Street in Chicago.

An expert in the telephone communications business, William Cole, testified in the course of his employment as an electronics engineer in the communication industry for 33 years, that people possessing cordless telephones, such as the one owned by defendant Williams, would be able to activate Williams' base station in his home. The caller could be linked through Williams' telephone line and not the caller's own line. Therefore, the caller could have been anywhere in Williams' building or within the transmitting area. Cole examined Williams' phone in his laboratory and concluded it was the type of telephone that had been the culprit in the bulk of false and mistaken calls by the early model cordless telephones. Cole also indicated that the terminal box in Williams' building contained simple telephone jacks for each line on an "open multiconnection panel." Anyone with an ordinary telephone could hook up a line to any jack at random, and then make a phone call credited to anyone in the building, including Williams. This call would subsequently appear on the 911 computer screen as coming from the residence connected to that phone jack.

This evidence notwithstanding, the trial judge found Jerry Williams guilty. On January 11, 1991, the court heard and rejected defendant's arguments for a new trial. Williams was sentenced to two years' felony probation, the first 60 days to be served in home confinement.

On appeal, defendant raises four possible errors as warranting reversal: (1) the charging instrument in this case is facially defective in that it fails to describe defendant's state of mind, and this is a specific intent crime; (2) the State failed to prove defendant guilty beyond a reasonable doubt; (3) the trial court improperly excluded from evidence the alternative tape, which eliminated extraneous police calls; and (4) the trial court improperly admitted into evidence two guns found in defendant's apartment.

First, defendant maintains that the charge of threatening a public official (Ill. Rev. Stat. 1987, ch. 38, par. 12—9(2)) was defective in that

the threat was not conveyed to the public official in this case, namely, Mayor Richard M. Daley. Defendant was charged under the following statute:

"§12—9. Threatening public officials. (a) A person commits the offense of threatening a public official when:

(1) that person knowingly and wilfully delivers or conveys, *directly or indirectly*, to a public official any telephone communication, letter, paper, writing, print, missive, or document containing a threat to take the life of or to inflict great bodily harm upon the public official or a member of his immediate family and

(2) the threat was conveyed because of the performance or nonperformance of some public duty, because of hostility of the person making the threat toward the status or position of the public official, or because of some other factor related to the official's public existence." (Emphasis added.) Ill. Rev. Stat. 1984, ch. 38, par. 12—9(a).

Defendant argues that the charging instrument is fatally defective in that it does not contain the elements of the crime as listed in section 12—9(a). The charging instrument stated in relevant part that

"Jerry Williams committed the offense of threatening a public official in that he, knowingly and wilfully delivered and conveyed indirectly, by means of a telephone conversation, in which he threatened to inflict great bodily harm upon and to take the life of Richard M. Daley, Mayor of the City of Chicago, Illinois, in violation of Chapter 38, Section 12—9(a) of the Illinois Revised Statutes 1985 as amended."

Defendant specifically contends that the charge fails to allege delivery of a threat to a public official, fails to allege an intentional state of mind and fails to allege hostility toward a public official in his official capacity.

■ This court disagrees with defendant's presumption and finds that the conveyance of a threat to a public official was implicit in the charge. Moreover, the accused manifested hostility by way of threatening to shoot the mayor. Defendant's contention that the information is defective is without grounds. The so-called threat was conveyed toward "Daley" because of the fact he is the mayor of Chicago, and in that capacity as mayor, a public duty exists. It can be reasonably inferred therefrom that the threat was conveyed because of Daley's performance or nonperformance of some public duty as mayor of Chicago. Hence, we cannot accept defendant's claim that the information in the charging instrument was fatally defective.

■ The main issue to be resolved by this court is whether the State proved beyond a reasonable doubt that defendant made the threatening phone call. The evidence established that an unidentified person called the 911 operator and threatened to shoot and kill Mayor Daley. The testimony of the expert witness, Cole, was certainly believable. It is clear that someone made a threat to the mayor of the City of Chicago, but what is not clear and what has not been proven beyond a reasonable doubt was that the call to 911 was made by defendant or from a telephone under defendant's control.

A conviction cannot be sustained on doubtful, vague and unreliable testimony. (*People v. Dowaliby* (1991), 221 Ill. App. 3d 788, 582 N.E.2d 1243; *People v. Wehrwein* (1989), 190 Ill. App. 3d 35, 545 N.E.2d 1005.) The voice expert could not render an opinion as to whether defendant's voice was the same as that of the unidentified caller. Moreover, the electronics expert testified that anyone could have made the call from defendant's phone line, given the type of cordless phone used by defendant and the unlocked phone box in the basement of his apartment building. Another phone call was made from defendant's phone while he was in custody, though his apartment was supposedly unoccupied at the time.

Whether defendant in this case was the unidentified caller was not sufficiently proven by the State. As a matter of law the evidence was not sufficient to convict defendant beyond a reasonable doubt. Therefore, defendant's conviction must be reversed.

■ The trial judge further abused his discretion when he prevented defense from admitting into evidence an alternative tape, wherein the intervening police calls were removed, such that the voice of the caller and the voice of defendant were played side by side. In an attempt to lay foundation for the shortened tape, the defense requested to play this tape to the State's key witness, Godbold, the operator who took the 911 call. The tape's authenticity had been testified to by way of offer of proof by the expert who made the duplicate tape.

The concept of presenting an alternative version of a taped recording, wherein the sequence of the voices is rearranged, in order to challenge the credibility of a witness, is a question that has never been ruled upon in this jurisdiction. We find that the trial court erred in sustaining the prosecution's objection and refusing to admit the alternative tape into evidence.

There is no doubt that sound recordings are admissible if they are otherwise competent, material and relevant and where a proper foundation is laid. (See *People v. Gaurige* (1988), 168 Ill. App. 3d 855, 522 N.E.2d 1306, citing *People v. Melchor* (1985), 136 Ill. App. 3d 708, 483

N.E.2d 971; *People v. Johnson* (1982), 122 Ill. App. 3d 532, 461 N.E.2d 585.) Where a tape accurately portrays the conversation used in evidence, it should be admissible.

In the case of *People v. Williams* (1985), 109 Ill. 2d 327, 487 N.E.2d 613, our supreme court considered whether a defendant had a constitutional right to have the entire tape played to a jury so the jury would be able to understand the complete context of the tape. This case was remanded to the trial court, based partially on the defendant's right to have the entire tape played. The court held that failure to allow the defendant to lay a proper foundation for use of the entire tape was cause for a new trial. Moreover, photographic evidence even when altered has been held admissible in court for many purposes. *People v. Bunch* (1987), 159 Ill. App. 3d 494, 512 N.E.2d 748; *People v. Toth* (1982), 106 Ill. App. 3d 27, 435 N.E.2d 748.

In this case, the length of the tape was such that playing the two portions closer in time would make it easier for the witness to identify the voice by hearing the two tape segments sequentially. There was no new information contained on the excluded tape that was unknown to the State. Presenting the two segments of the tape closer together in time sequence would be more realistic and make it easier to understand what was said in the two segments. The first segment contained the call to 911 from some phone number, purportedly the Williams phone number, and the second recorded the conversation between the operator and Williams, when she called to verify his phone number and the police were at the door of Williams' apartment. This would make an easier comparison. The trial court made the error of limiting the defense cross-examination of Godbold. It is possible that this witness would have stated that the two voices were distinctly different and, therefore, the first caller could not have been the second caller. This did not happen, however, so the court did not have the opportunity to see whether or not this witness was in error.

Although we could remand this case for a new trial based upon the aforesaid error of the trial court, defendant's conviction warrants a reversal based upon the lack of sufficient identification evidence to convict him. Since this case is reversed, we need not address the issue of whether the guns found in defendant's apartment were improperly admitted as evidence at trial.

Reversed.

RIZZI and GREIMAN, JJ., concur.