THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY JACKSON, a/k/a Cornell Weathers, Defendant-Appellant.

First District (4th Division)   No. 1—96—1445

Opinion filed December 18, 1997.

Rita A. Fry, Public Defender, of Chicago (Evelyn G. Baniewicz, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Janet Powers Doyle, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SOUTH delivered the opinion of the court:

Following a jury trial, defendant, Terry Jackson, a/k/a Cornell Weathers, was found guilty of first degree murder and sentenced to 30 years' imprisonment. Jackson admitted that he performed the acts which caused the death of the deceased, Milton Collins. However, Jackson claimed that he took those actions in self-defense out of fear of Collins.

On appeal, Jackson argues that the court erred in precluding evidence regarding Collins' past acts of violence and prior convictions and in admitting a 911 tape. Jackson also contends that numerous comments made during the prosecutor's closing argument and the court's denial of his motion for mistrial denied him a fair trial. For the following reasons, we affirm Jackson's conviction of first degree murder.

During trial, Jackson testified that on the morning of March 7, 1994, he was asleep in a friend's apartment at 2616 South King Drive in Chicago when he was awakened by Collins, who was hitting him in the face and then collaring him against the wall. Jackson hit Collins and ran, partially clothed, to the lobby downstairs. While in the lobby, Jackson saw the building manager and told him he had been attacked and to call the police. The manager refused, stating that was not his job.

Jackson then went outside to a phone booth, called 911 and told the operator that he had been attacked at 2616 South King Drive. The operator instructed him to wait in the lobby of the building and that a squad car would be there in about five minutes. As he was going back into the building, he picked up a stick lying against the wall of the building, carried it inside the lobby and waited for the police. While in the lobby, he saw Collins walking toward the bus stop on King Drive with a television in his hands. Approximately 15 minutes

had passed from the time Jackson ran from the apartment until he saw Collins.

Jackson further testified that after Collins sat down at the bus stop, he walked up to Collins and asked why he was bothering him and why he wanted to take from him. Collins replied "fuck you," "eased up off the bench" and reached out, trying to grab him. Jackson then hit Collins between the neck and the shoulder with the stick because he was afraid. After being hit with the stick, Collins sat back down on the bench. He then "eased up" again with his hands up. Jackson reached over his hand and hit him with the stick in the side of the neck, close to the ear. Jackson then saw Collins was dazed and ran back to his friend's apartment to put on some clothes.

Jackson also testified that after he got dressed, he returned to the lobby. He took the stick with him for protection. When the elevator door opened to the lobby, Jackson saw Collins coming through the door of the elevator room. Both men could not pass through the doorway at the same time. Jackson then asked Collins why he wanted to bother him. He told Collins that he ought to "get off that shit bothering people."

Collins replied "fuck you" and moved toward Jackson with a look on his face as though he wanted to grab him. As Jackson tried to get out the door, Collins came a little closer to him. Jackson testified that he then hit Collins in the mouth, to get Collins off of him, and again in the head with the stick because he was afraid. After Collins was struck in the head with the stick, he fell to the ground on his face and his tooth came out. Jackson then ran out of the lobby and threw the stick on the side of the building.

The prosecution presented the testimony of three eyewitnesses to the following events. Darryl Love, the building superintendent of the Prairie Courts Apartments at 2616 South King Drive, testified that on March 7, 1994, at approximately 8:30 a.m., he was working on the north side of the building. When he opened the door of the building, he heard a resident, Floyd Metcalfe, yelling to Love from his apartment window above, "We need to stop this, you need to stop this." Love turned and saw Jackson and Collins at the bus stop on King Drive. Collins was sitting on the bench and Jackson was standing next to him holding a stick.

Love testified that Jackson and Collins were saying something to each other, but he could not hear what was being said. He saw Jackson hit Collins in the head with the stick and Collins place his hands over his head in an attempt to cover himself. Jackson swung the stick again and hit Collins in the head a second time. Love further testified that Collins did not have a weapon and never attempted

to hit Jackson, get up from the bench or move his hand toward Jackson at all.

Floyd Metcalfe testified that he witnessed a man beating another man with a stick at the bus stop. Although Metcalfe could not identify either man because he could not see their faces, he did identify the stick used to strike Collins. Metcalfe testified that the only man fighting was the one with the stick; the man on the bench never got up from the bench and did not have time to do anything other than put up his arms to try to block the blows.

Luke Boone, the building manager, did not see what occurred at the bus stop. However, Boone testified that he saw Jackson strike Collins in the head with the stick in the lobby of the 2616 South King Drive building. When Boone came through the south door of the lobby on the morning of March 7, 1994, he saw Collins standing in the lobby. Jackson came through the door into the lobby with a stick in his hand and stopped Collins with the stick, telling him that "he ought to get up off of that shit of jumping on people."

Jackson, while holding the stick on his shoulder with one hand, hit Collins in the mouth with his fist. At that time, Collins leaned over on a Plexiglass window, groping around with his fingers in his mouth trying to find if a tooth had been loosened. Another man standing in the north door stated that the police were coming. Jackson grabbed the stick a little tighter and hit Collins in the top portion of his head, "baseball style," as if he were swinging a baseball bat. After Collins was struck with the stick, he bounced off the Plexiglass window, slid down to the ground and began to cough up blood.

Boone further testified that Collins had nothing in his hands, his feet were stationary and he did not move at all toward Jackson before being hit in the mouth and the head. Jackson then ran away, and Boone ran to the manager's office to call 911. Boone later went to the police station and identified Jackson in a lineup. Collins subsequently died from multiple head injuries sustained when Jackson struck him in the head with the stick.

Jackson first argues that the court erred in precluding evidence regarding Collins' past acts of violence and prior convictions. The Illinois Supreme Court has stated that when the theory of self-defense is raised, evidence of the victim's aggressive and violent character is relevant (1) to show the defendant's state of mind during the altercation with the victim and (2) to support the defendant's version of the facts where there are conflicting accounts of what happened. *People v. Lynch*, 104 Ill. 2d 194, 470 N.E.2d 1018 (1984).

Prior to opening statements, the court ruled on the prosecution's motion to exclude evidence of Collins' past convictions and bad acts.

The court held that Jackson would be allowed to present evidence of Collins' prior bad acts of which Jackson was aware at the time of the altercation in order to show Jackson's state of mind or to demonstrate his perception as to why he needed to use force against Collins.

However, the court further held that any violent acts of which Jackson was unaware were not admissible under *Lynch* to show Collins' propensity to commit violence because they did not in any way support Jackson's version of the facts, since there were no conflicting accounts of what happened and the evidence concerning who was the aggressor was undisputed.

The record indicates that approximately 15 minutes had passed from the time Jackson ran from the apartment until he saw Collins walking toward the bus stop. The testimony of two eyewitnesses, Love and Metcalfe, Jackson's statement to investigating officers and Jackson's trial testimony established that at the time Jackson struck Collins twice in the head with the stick at the bus stop, Collins was easing up off the bench, had nothing in his hands, was not fighting Jackson, and simply tried to cover his head with his arms in an unsuccessful attempt to avoid being struck.

The testimony of another eyewitness, Boone, Jackson's statement to investigating officers and Jackson's trial testimony established that when Jackson struck Collins in the mouth with his fist and in the head with the stick in the lobby, Collins had nothing in his hands. He did not touch Jackson, and his feet were stationary.

■ As a general proposition of law, admission of evidence is within the sound discretion of the trial court, whose decision will not be overturned on review unless a clear abuse of discretion is apparent. *People v. Biro*, 260 Ill. App. 3d 1012, 636 N.E.2d 803 (1994). Furthermore, this court has held that *Lynch* evidence may be properly excluded where, as here, there was no conflict concerning who was the aggressor. *People v. McGee*, 213 Ill. App. 3d 458, 572 N.E.2d 1046 (1991); accord *People v. Armstrong*, 273 Ill. App. 3d 531, 653 N.E.2d 17 (1995) (*Lynch* evidence properly excluded where defendant initiated the confrontation and failed to withdraw).

In view of the undisputed facts of record, we find that Jackson initiated the confrontation and failed to withdraw at the bus stop and in the lobby when he struck the death blows to Collins' head with the stick. Thus, there was sufficient evidence supporting the court's ruling that there was no conflict concerning who was the aggressor and that, therefore, any violent acts of which Jackson was unaware were not admissible under *Lynch* to show Collins' propensity to commit violence. Accordingly, we find no abuse of discretion by the court.

■ Jackson next contends that the court erred in admitting a 911 tape to impeach his testimony and in permitting the prosecutor to play the tape during rebuttal closing argument. There is no doubt that sound recordings are admissible if they are otherwise competent, material and relevant, and where a proper foundation is laid. *People v. Williams*, 244 Ill. App. 3d 669, 614 N.E.2d 367 (1993). Where a tape accurately portrays the conversation used in evidence, it should be admissible. *Williams*, 244 Ill. App. 3d 669, 614 N.E.2d 367.

In the present case, Jackson stipulated that the tape accurately portrayed the calls made to 911 between 7:58 a.m. and 9:14 a.m. on the morning of March 7, 1994, and further stipulated that the only call reporting an incident at 2616 South King Drive from any citizen other than Mr. Boone was the 8:20 a.m. call that was played for the jury. Therefore, Jackson stipulated to the necessary foundation for the admission of the 911 tape.

■ Jackson next argues that the court erred in admitting the 911 tape because it was hearsay. Hearsay is an out-of-court statement used to prove the truth of the matter asserted. *People v. Velasco*, 216 Ill. App. 3d 578, 575 N.E.2d 954 (1991). In the present case, the tape was not admitted to prove the truth of the matter asserted, *i.e.*, that Jackson beat Collins with a bat on 26th and King Drive. Rather, the court held that, "[t]he only reason I would allow the tape would be to rebut his testimony that he called the police."

During direct examination, Jackson testified that he made the 911 phone call and told the police he had been attacked. Since Jackson stipulated that the tape accurately reflected calls made to 911 between 7:58 a.m. and 9:14 a.m. on March 7, 1994, the tape contradicted Jackson's testimony that he called 911 himself.

Moreover, when a defendant chooses to testify in his own behalf, he places his credibility in issue, and when he introduces an issue on direct examination, even if that issue is collateral to the issue to be proved, his statement may be attacked both on cross-examination and in rebuttal. *People v. Ford*, 163 Ill. App. 3d 497, 516 N.E.2d 766 (1987). Therefore, the court properly admitted the tape for the non-hearsay purpose of rebutting Jackson's testimony that he called the police during that time period.

■ Jackson further contends that he was prejudiced and denied a fair trial when the court allowed the prosecution to replay the 911 tape during closing argument. In support of this contention, Jackson cites *People v. Ammons*, 251 Ill. App. 3d 345, 622 N.E.2d 58 (1993). In *Ammons*, the appellate court found reversible error where the prosecution played defendant's taped statement during its rebuttal. The court stated that "[a]llowing such evidence to be reintroduced

dramatically overemphasized its credibility. As such, the defendant was severely prejudiced." 251 Ill. App. 3d at 347, 622 N.E.2d at 60.

The limited purpose for which the tape was allowed distinguishes this case from *Ammons*. In *Ammons*, the prosecutor played the defendant's 18-minute-long statement during closing argument. Here, the 911 tape shows that the caller reported that a man was beating another man with a baseball bat at 26th and King Drive. This fact had already been established by three eyewitnesses, defendant's statements to investigating officers, and defendant's testimony at trial. The portion of the tape that was played for the jury was approximately 15 seconds long and was allowed only to rebut defendant's statement that he phoned 911. It was previously stipulated that the 911 tape was a true and accurate transcription of the calls made regarding the incident at 2616 South King Drive on March 7, 1994.

In addition, evidentiary errors are harmless where the properly admitted evidence is so overwhelming that no fair-minded juror could reasonably have voted to acquit defendant. *People v. Miller*, 173 Ill. 2d 167, 670 N.E.2d 721 (1996). As previously stated, Jackson's guilt was established through three eyewitnesses, his statements to investigating officers, and his own testimony at trial. Because the evidence of Jackson's guilt was so overwhelming, any error in playing the tape in rebuttal argument could not reasonably have affected the verdict and, therefore, was harmless.

■ Finally, Jackson argues that numerous comments made during the prosecutor's closing argument, and the court's denial of his motion for mistrial, denied him a fair trial. We disagree.

The boundaries of proper closing argument are broad. *People v. Anderson*, 250 Ill. App. 3d 439, 620 N.E.2d 1281 (1993). The prosecutor has a right to comment on the evidence and draw all legitimate inferences deducible therefrom, even if they are unfavorable to defendant. *People v. Spain*, 285 Ill. App. 3d 228, 604 N.E.2d 294 (1996). When challenged comments are within rebuttal argument, they will not be held improper if they have been invited by defense counsel's argument. *People v. Smith*, 199 Ill. App. 3d 839, 854, 557 N.E.2d 596 (1990).

Further, improper prosecutorial comments can be cured by instruction to the jury to disregard argument not based on the evidence and to consider instead only the evidence presented to it. *People v. Moore*, 171 Ill. 2d 74, 662 N.E.2d 1215 (1996). Moreover, a verdict will not be disturbed on review unless it is shown that the comments substantially prejudiced defendant to the extent that absent the comments, the jury would have returned a different verdict. *People v. By-*

*ron*, 164 Ill. 2d 279, 295, 647 N.E.2d 946, 954 (1995). Additionally, because the circuit court is in a better position than a reviewing court to determine the prejudicial effect of any remarks made during closing argument, its determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion. *People v. Pittman*, 126 Ill. App. 3d 586, 467 N.E.2d 918 (1984).

■ Jackson first argues that the prosecutor improperly argued that the jury should not consider Collins' violent behavior by stating:

> "Don't treat Milton Collins as the defendant would have you. Milton Collins is a victim, ladies and gentlemen of the jury. He's the victim of a murder. He is the same as any other victim of murder in this county."

The prosecutor's statements did not suggest that the jury disregard Collins' prior bad act. Rather, the statements restated evidence adduced at trial that Collins was not the aggressor but the victim.

In rebuttal closing argument the prosecutor stated:

> "The fact that someone has alcohol in their system, the fact that someone has a, not cocaine but a metabolite of cocaine in their system, that does not mean that the law treats them different \*\*\*."

The record reflects that the prosecutor's remarks were made in response to statements made during defense counsel's closing argument when he stated the victim was "a bully" and "you hate to see a bully like that get away with stuff like that," and comments regarding the victim's blood-alcohol content as well as evidence of the metabolite of cocaine in Collins' system. In addition, upon defense counsel's objection to the prosecutor's remarks, the court immediately cured any error by admonishing the jury to dismiss a statement that is not based upon the evidence or reasonable inferences therefrom.

■ Jackson next argues that, during rebuttal closing argument, the prosecutor improperly attacked defense counsel by stating:

> "[A] number of comments that were made to you by Mr. Sarley, and this is nothing personal against him, that are not the law and are being done to divert your attention from two things."

Defense counsel objected to this remark, and the court stated, "Well, counsel, you can say defense counsel's statements."

The prosecutor also stated that defense counsel had accused the felony review assistant State's Attorney "of deliberately doing something" and stated, "That is improper for them to suggest, and they know it." Upon defense counsel's objection, the court immediately instructed the jury, "[a]ny statement that is not based on the evidence and reasonable inferences should be disregarded."

Finally, Jackson challenges the prosecutor's remarks that "[o]nce

defendant takes the stand, make no mistake about it, they do not want you to understand this, *** he opens himself up, and his credibility is on the line in this case." Defense counsel's objection to this statement was overruled.

The prosecutor's statements were responses to defense counsel's closing argument and were not directed to him personally, and the court admonished the jury that, "[a]ny statement that is not based on the evidence and reasonable inferences should be disregarded."

■ Jackson also argues that the prosecutor improperly attempted to shift the burden of proof by referring to defendant's subpoena powers. During Jackson's closing argument, defense counsel argued, "Why doesn't the [S]tate's [A]ttorney office call [D]etective Ryan in their case in chief *** and tell you about what was said in those thirty or forty minutes? There were three pages of notes taken during that conversation ***. Cornell Weathers was talking about this incident ***. I submit they do not want you to know why."

In response to defense counsel's statements, the prosecutor stated that defense counsel possessed "the same subpoena power" as the State. Defense counsel objected to this remark and the court sustained his objection. Hence, any potential error was cured. *Moore*, 171 Ill. 2d 74, 662 N.E.2d 1215. Further, the prosecutor's statements were direct responses to defense counsel's closing argument.

■ Jackson further argues the prosecutor improperly vouched for and enhanced the credibility of another assistant State's Attorney and characterized second degree murder as a compromise verdict. While we agree that such comments by the prosecutor are highly improper, careful review of the record indicates that there is no evidence that Jackson was substantially prejudiced by the prosecutor's comments to the extent that, absent the comments, the jury would have returned a different verdict. The evidence that Jackson was the aggressor and did not act in self-defense when he caused Collins' death by repeatedly striking him in the head with the stick was overwhelming.

Furthermore, each of the challenged statements was cured by the court's admonishment to the jury that it must disregard and dismiss any statement not based upon the evidence or reasonable inferences therefrom and that the prosecution had the burden to prove Jackson's guilt beyond a reasonable doubt. Therefore, we find that the prosecutor's comments, taken individually or cumulatively, did not deprive Jackson of his right to a fair trial.

■ Jackson's final argument is that the court erred in denying his motion for mistrial. A mistrial should be declared only where there is an occurrence of such character and magnitude as to deprive

a party of a fair trial and the moving party demonstrates actual prejudice. *People v. Garrett*, 276 Ill. App. 3d 702, 658 N.E.2d 1216 (1995). The decision whether to grant a mistrial is within the broad discretion of the trial court based on the particular circumstances of the case and should not be disturbed on review absent a clear abuse of discretion. *Garrett*, 276 Ill. App. 3d 702, 658 N.E.2d 1216.

Here, there was no basis to grant a mistrial. As noted above, the prosecutor's comments were either based on the evidence, invited by defense counsel, cured by jury instructions or harmless. Accordingly, we find that the court did not abuse it's discretion in denying Jackson's motion for a mistrial. For the aforementioned reasons, we affirm Jackson's conviction of first degree murder.

Pursuant to *People v. Nicholls*, 71 Ill. 2d 166, 374 N.E.2d 194 (1978), and relevant statutory provisions (725 ILCS 5/110—7(h) (West 1994); 55 ILCS 5/4—2002.1 (West 1994)), we grant the State's motion and incorporate as part of the judgment and mandate a fee of $100 for defending this appeal.

Affirmed.

HOFFMAN, P.J., and HOURIHANE, J., concur.