THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES KANNAPES, Defendant-Appellant.

First District (4th Division)   No. 1—89—1917

Opinion filed December 27, 1990.

Arthur Engelland, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Gunta Z. Hadac, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant James Kannapes was convicted of delivery of a controlled substance (cocaine) (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)) and sentenced to 10 years' imprisonment. Because we agree with defendant's argument that he was deprived of a fair trial when the State was permitted to introduce into evidence, and argue an inference of defendant's guilt from, a photograph of defendant wearing a T-shirt that bore the words "Enjoy Cocaine," we reverse and remand for a new trial.

Defendant was convicted for the May 4, 1987, sale of approximately 193.9 grams of cocaine to undercover police officers assigned to the Northeastern Metropolitan Enforcement Group (MEG). Brian Reaves (Reaves) and Carina Hernandez (Hernandez) also participated in the transaction. Evidence introduced at trial indicates that arrangements for the drug sale were made by Reaves with MEG Officer Joseph Errico. The controlled substance was delivered in Hernandez' purse, by defendant and Hernandez, to MEG Officer Patricia Jordan

in that officer's car while Officer Errico and Reaves waited nearby. The transaction occurred at a gas station owned by Reaves' father in the City of Chicago.

Officer Errico testified that at one point during the transaction, Reaves told Officer Errico that he had to call his "connect, Jimmy," and that a short time later, defendant drove into the gas station in a black Cadillac and met Reaves, Hernandez, and Officer Errico in the gas station parking lot. Officer Errico testified that while he was alone with defendant, defendant told Officer Errico that he should "deal directly" with defendant, because defendant would charge less money for an ounce of cocaine than did Reaves.

Both Hernandez and Officer Jordan testified that while Hernandez and defendant were sitting in Officer Jordan's automobile, defendant told Hernandez to give her purse to Officer Jordan. Defendant then turned, took Hernandez' purse from her, and removed from it a clear plastic bag containing a white substance. Hernandez and Officer Jordan testified that defendant handed the plastic bag to Officer Jordan, asking her if she "knew what good cocaine smelled like." However, Hernandez and Officer Jordan also acknowledged that at a preliminary hearing, each had testified that she could not recall anything that defendant had said while in the officer's car.

Officers Errico and Jordan also testified that the drug transaction that occurred on May 4, 1987, and resulted in the arrests and instant prosecution had originally been arranged to occur on April 30. However, at this meeting on April 30, Reaves informed Officers Errico and Jordan that the sale could not be consummated because Reaves' "connect" could not obtain the cocaine on that date. While in Reaves' company, Officers Errico and Jordan were approached by defendant, who was driving a black Cadillac. Defendant told the officers that he would have the narcotics the following evening.

At the conclusion of the narcotics purchase on May 4, 1987, and following the arrest of Reaves, Hernandez, and defendant, MEG officers seized defendant's automobile and the items therein. Included in the defendant's personal items was a photograph of the defendant. Officer Errico, who inventoried the items, identified the photograph at trial. Officer Errico also testified that defendant telephoned him shortly after defendant's arrest and requested the return of the photograph. Defendant's request was refused.

At the close of the State's case against defendant, the court held an in-chambers hearing at which defendant objected to the admission into evidence of the photograph and its publication to the jury, as well as any cross-examination of defendant regarding the photograph or

his request for its return. The State argued that the photograph and defendant's request for the return of the photograph were admissible to show defendant's "state of mind" and "consciousness of guilt," because defendant would not have requested the photograph's return if it were not incriminating. The trial court overruled defendant's objections.

Defendant testified in his own behalf at trial, stating that he had no knowledge that the events at which he had been present were a drug transaction. He testified that he had never used, sold, or facilitated the sale of any illicit or controlled substance. Defendant explained that he had gone to the gas station on May 4, 1987, because Reaves' father had agreed to repair the brakes on defendant's car. Reaves' father confirmed at trial that on that date, defendant waited at the gas station for Reaves' father to repair the brakes.

Defendant stated that while he was at the gas station, he saw Reaves, Hernandez, and Officer Errico. Defendant had not previously met Officer Errico, but was acquainted with Reaves and Hernandez. Defendant spoke to Reaves while in the company of Hernandez and Officer Errico. At one point, Reaves suggested that defendant walk Hernandez to a beige Camaro parked nearby. Because Errico and Hernandez also suggested that defendant do so, defendant complied. When they arrived at the car, Hernandez got into the back seat. The woman sitting in the driver's seat (Officer Jordan) asked defendant to sit in the front seat of the car, and defendant did so. Officer Jordan then asked, "Where's the stuff?" Defendant testified that Hernandez handed her purse to Officer Jordan, who opened it and withdrew a clear plastic bag containing a white substance. Within moments, police surrounded the vehicle and forcibly removed defendant from the car.

On cross-examination by the State, defendant stated that he had telephoned Officer Errico to request the return of a photograph of defendant that had been taken from defendant's car and retained in police custody. Defendant explained that the T-shirt in the photograph bore the words "Enjoy Cocaine" and was a parody of an advertisement for Coca-Cola. He stated that the garment was popular and readily available for sale when he had been vacationing in Acapulco and the photograph in question had been taken.

In its closing statements to the jury, the State argued that defendant's testimony was not credible and suggested to the jury that it could not be a "coincidence that he's in Acapulco wearing an Enjoy Cocaine tee-shirt that's with him when he's arrested, that he feels obliged *** to call the Officer and say I want this *** back." Later, in

rebuttal closing argument, the State argued, "The shirt that says Enjoy Cocaine, that's circumstantial evidence that he's a cocaine dealer, that he knows about dealing drugs and that that's what he's involved in."

Based upon all of the evidence, including the photograph published to the jury during deliberations, the jury found defendant guilty as charged. Thereafter, the trial court denied defendant's post-trial motion, entered judgment in conformity with the jury's verdict, and sentenced defendant to 10 years' imprisonment. Defendant's timely appeal followed.

Defendant argues on appeal that he should receive a new trial because he was prejudiced by the erroneous admission into evidence of the photograph of him, the State's elicitation of testimony regarding what the photograph depicted and his request for the return of the photograph. He further argues that the remarks of the prosecutor during closing argument with respect to the significance of the photograph and defendant's request for the return of the photograph constituted reversible error. Based upon our review of the record, we agree. ,

■ Evidence is relevant, and thus admissible, where it tends to prove a material fact in issue and its probative value outweighs its prejudicial effect. (*People v. Eyler* (1989), 133 Ill. 2d 173, 217-18, 549 N.E.2d 268.) Defendant's identity was not at issue during his trial, and no argument is made that the photograph was admissible in order to prove that defendant had been properly identified. (See, *e.g.*, *People v. Holman* (1984), 103 Ill. 2d 133, 149-50, 469 N.E.2d 119.) Also, the State does not argue that the defendant's request for the return of the photograph was admissible to show defendant's consciousness of guilt on the theory that defendant was attempting to conceal or destroy State evidence. (See, *e.g.*, *People v. Gacho* (1988), 122 Ill. 2d 221, 247, 522 N.E.2d 1146; *People v. Veal* (1986), 149 Ill. App. 3d 619, 625, 500 N.E.2d 1014.) Nor does the State argue that defendant's T-shirt was a type of "drug paraphernalia" or distinctive marking indicative of drug use, admissible to show defendant's knowledge with respect to the use of illicit substances. See, *e.g.*, *People v. Harris* (1972), 52 Ill. 2d 558, 288 N.E.2d 385; *People v. Johnson* (1988), 174 Ill. App. 3d 726, 528 N.E.2d 1356.

The State argues on appeal that the photograph, and defendant's request for its return, were admissible to prove defendant's bad moral character. To support this argument, the State cites *People v. Randle* (1986), 147 Ill. App. 3d 621, 498 N.E.2d 732. In *Randle*, the court determined that the trial court had erred in permitting the State to in-

troduce evidence that a defense witness had prior misdemeanor convictions in order to show that witness' propensity to violence. *Randle* is distinguishable and has no significant bearing on the issue in this appeal.

The State also relies upon *People v. Allison* (1983), 115 Ill. App. 3d 1038, 452 N.E.2d 148. In *Allison*, the defendant was charged with indecent liberties with a child. He testified on cross-examination that he had no child pornography at his residence. The State was permitted to introduce into evidence exhibits consisting of advertisements for child pornography that had been seized from defendant's residence after his arrest. The court found that the trial court did not abuse its discretion in admitting these exhibits into evidence for the limited purpose of impeaching defendant's trial testimony. The court noted that defendant's trial testimony opened the door for impeachment and that the reception of collateral evidence was a matter within the trial court's discretion. *Allison* is inapposite to the instant cause, since the photograph here was not admitted for the limited purpose of impeaching defendant's trial testimony, but was admitted as substantive evidence of defendant's guilt.

The cases of *Randle* and *Allison* do not support the State's argument that the defendant's photograph, or his request for its return, were admissible to prove defendant's lack of moral character. The Illinois Supreme Court's decision in *People v. Hendricks* (1990), 137 Ill. 2d 31, 560 N.E.2d 611, demonstrates that the challenged evidence was inadmissible for the purpose of proving defendant's lack of moral character.

In *Hendricks*, the Illinois Supreme Court addressed the question of whether certain evidence regarding a defendant's past encounters with female models during his business activities was properly admissible against the defendant in his trial for the murder of his wife and children. The supreme court stated that as a general rule, "a defendant's prior misconduct is not admissible for the purpose of establishing his bad character or propensity to commit illegal or immoral acts, because the prejudicial impact of such evidence outstrips its negligible probative value. [Citation.]" (137 Ill. 2d at 52.) The court noted that such evidence "overpersuades" the jury against the defendant and "undermines the presumption of innocence. [Citation.]" (137 Ill. 2d at 52.) However, the court also noted that such evidence may be admissible to prove a defendant's motive, intent, identity, or absence of mistake. 137 Ill. 2d at 53.

In this context, the Illinois Supreme Court in *Hendricks* rejected the State's argument that the challenged evidence was prop-

erly admissible to prove defendant's motive for the killing of his family. The court observed that the evidence "presents no more than a haphazard series of encounters" (137 Ill. 2d at 52), and that admission of the evidence would permit defendant to be convicted because of "the idiosyncrasies of his past life." (137 Ill. 2d at 54.) The court also observed that the error of admitting this evidence was not harmless, as the evidence was used by the State to prove its case against defendant. 137 Ill. 2d at 55.

The Illinois Supreme Court's analysis in *Hendricks* is applicable to the case at bar. In the instant cause, the State argues that defendant's decision to be photographed in a T-shirt bearing the words "Enjoy Cocaine," and his desire that the photograph be returned to him from police custody, tended to prove that the defendant is of low moral character. This evidence might have been properly admitted if it bore upon the defendant's motive, intent, identity, or absence of mistake (*Hendricks*, 137 Ill. 2d at 53), but the State does not argue the applicability of any of these exceptions.

Assuming *arguendo* that the defendant's photograph and request for its return are properly classified as tending to prove either defendant's intent, motive, or absence of mistake, we nonetheless conclude that the prejudicial effect of the challenged evidence far outweighed whatever probative value, if any, that such evidence may have had on the question of defendant's moral character. Consequently, we determine that it was error to admit into evidence, as substantive evidence of defendant's guilt, both the photograph seized from defendant's automobile after his arrest and the conversation between defendant and the police officer wherein defendant requested that the photograph be returned.

The State also claims that error in the admission of this evidence was harmless in light of the overwhelming evidence of the defendant's guilt. We disagree. The record shows that the evidence presented by the State and defense was in sharp conflict. Although State witnesses testified to the defendant's words and conduct during the drug transaction on May 4, 1987, and the aborted drug sale that occurred a few days earlier, defendant repudiated any knowledge of or participation in these incidents. Whether defendant had, in fact, made the incriminating statements attributed to him by witnesses for the State was pivotal to the prosecution's case against defendant. As a result, the jury's assessment of defendant's credibility at trial was crucial to its resolution of defendant's guilt.

In its closing argument, the State expressly directed the jury's attention to the words appearing on the defendant's T-shirt and explic-

itly advised the jury that the words "Enjoy Cocaine" were "circumstantial evidence that he's a cocaine dealer, that he knows about dealing drugs and that that's what he's involved in." By so doing, the State invited the jury to draw the conclusion that defendant was guilty of the charge of delivery of cocaine, because of defendant's decision to be photographed in a T-shirt bearing the words "Enjoy Cocaine." Under these circumstances, the decision cited by the State on appeal (*People v. Jimerson* (1989), 127 Ill. 2d 12, 42-43, 535 N.E.2d 889) is factually distinguishable, and we cannot say that the error was harmless. See *Hendricks*, 137 Ill. 2d at 55; *People v. Hope* (1986), 116 Ill. 2d 265, 508 N.E.2d 202.

In light of this disposition, we do not address the other arguments raised by defendant on appeal, as the matters are not likely to arise on remand.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause remanded for a new trial.

Reversed and remanded.

JIGANTI and JOHNSON, JJ., concur.